The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Mary Moore Hoag and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award except for modifications relating to the number of weeks of compensation to which plaintiff is entitled. The Full Commission therefore affirms the Opinion and Award of the Deputy Commissioner with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Thorn Apple Valley is the Administrator for Coast Refrigerated Trucking Company, a qualified self-insured.
4. Plaintiff sustained a compensable injury by accident on October 26, 1994.
5. The parties have stipulated to the admission of plaintiffs Internal Revenue Service filings for 1993-1996 and his medical records.
6. The issues to be resolved are:
a. What is plaintiffs average weekly wage; and
b. What rating should plaintiff receive for his compensable injury?
 ***********
Based upon all of the competent evidence of record and reasonable inferences drawn therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On October 26, 1994 plaintiff was 59 years old and was employed by Coast Refrigerated Trucking Company as an owner-operator of a tractor-trailer to haul freight for Thorn Apple Valley.
2. Plaintiff had held a commercial drivers license for some 25 years and had been working for defendant-employer for 17 years.
3. During October 1994, defendant-employer employed other drivers who drove tractor-trailers performing the same duties that plaintiff performed, but drove company-owned vehicles for which defendant-employer was responsible for all expenses regarded as overhead or variable expenses. During that time, defendant-employer generally had both plaintiff and its company-paid drivers driving approximately the same amount of miles each, between 80,000 and 100,000 miles per year and paid $.28 per mile to company drivers and compensation based on other factors to owner-operators.
4. On October 26, 1994, plaintiff was injured as a result of an accident arising out of and in the course and scope of his employment with defendant-employer. He received temporary total disability benefits beginning October 28, 1994, and continuing through April 1, 1995. At that time, he was paid $333.43 per week. There was no Form 21 executed and there was no agreement establishing a determination of average weekly wage.
5. During his employment with defendant-employer, plaintiff operated under a lease agreement with the employer whereby plaintiff was paid a fixed price per trip to and from established destinations. No consideration was made within this fixed price for time expended or expenses incurred. The employee was personally responsible for all expenses incurred such as fuel, upkeep, maintenance, licenses and insurance associated with the operation of his personally owned truck. No additional compensation was paid to him beyond the established lease payments.
6. For the 43.6 weeks proceeding the date of his injury, plaintiff received from defendant-employer lease payments in the amount of $67,688.32. On return trips he was able to earn $6,893.68 from another company, making his gross earnings for the year $74,582.00.
For this period of time in 1994, plaintiff reported to the Internal Revenue Service (IRS) total business expenses related to the operation and upkeep of his motor vehicle in the amount of $61,751.00. These numbers come directly from plaintiffs IRS filings, which were submitted, into evidence. This resulted in wages earned in the amount of $12,831.00. The wage calculation is the difference between his gross receipts for lease payments and those expenses incurred in generating those receipts. Proportionally, based upon the net wages for 1994, the total wages paid by the employer during the 43.6 weeks preceding the accident in 1994 were $11,667.21. This results in an average weekly wage of $267.60.
7. Plaintiff was treated by Dr. Robert Wilfong who performed a cervical spinal fusion at C6-7. Dr. Wilfong also diagnosed physical impairments at C5-6 along with other degenerative changes, but these physical conditions were not found to be arising out of or caused by the accident, which occurred on October 26, 1994.
8. Dr. Wilfong released the employee from his care in April 1995 and, pursuant to a letter in April 1995 and a Form 25R filed in May 1995, Dr. Wilfong assigned a 5% permanent partial impairment of plaintiffs spine with findings of residual pain following surgery. According to Dr. Wilfong, the 5% figure was incorrect because it did not take into consideration the fusion of two vertebrae. Dr. Wilfong subsequently indicated the range of his rating could be from 10% to 20% and then determined it to have been 20% in November 1996.
9. The Full Commission finds the correct disability rating to be 15% of plaintiffs back, the average of the final range testified to by Dr. Wilfong.
10. Plaintiff contends that his net earnings are not the proper measure of his wage earning capacity since expenses fluctuate. He contends that his wage should be determined by taking the average wage of company drivers.
11. Plaintiff could have remained a company driver had he so chosen. However, in order to have the final say on what destinations he drove to, he elected to become an owner-operator. He cannot now be heard to complain that his earning capacity should be measured by what company drivers earned, since he knowingly and willingly accepted other terms of employment to suit his own ends.
12. The North Carolina Self-Insurance Guaranty Association defended this case during its appeal status as successor in self-insurance workers compensation liability to defendant employer Coast Refrigerated Trucking Company (Thorn Apple Valley).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following additional:
 CONCLUSIONS OF LAW
1. On October 26, 1994, plaintiff suffered an admittedly compensable injury by accident, which arose out of and occurred within the course and scope of his employment. N.C. Gen. Stat. 97-2(6).
2. At the time of his accident on October 26, 1994, plaintiff earned an average weekly wage of $267.60, which yields a compensation rate of $178.41 per week. N.C. Gen. Stat. 97-2(5).
3. As a result of injuries sustained on October 26, 1994, the employee has sustained a 15% permanent partial impairment of his back. N.C. Gen. Stat. 97-31.
4. Defendant-employer, who compensated plaintiff at the rate of $333.43 per week from October 28, 1994 through April 1, 1995, is entitled to a credit of the overpayment. N.C. Gen. Stat. 97-42.
5. Plaintiff is entitled to receive 45 weeks of compensation at the rate of $178.41 per week minus the credit due defendant-employer and subject to a reasonable attorneys fee.
6. Plaintiff is entitled to receive such medical care as is necessary for his compensable injuries and have all medical expenses paid for his treatment. N.C. Gen. Stat. 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay all medical expenses resulting from the employees compensable injury when the same have been submitted to the employer.
2. Subject to the award of attorney fees designated herein in paragraph 3 of the Award, defendant shall pay to plaintiff the sum of $178.41 per week for 45 weeks, in a lump sum, as it already has accrued. This payment shall be subject to a credit arising out of any overpayment of compensation paid by the employer for temporary total disability benefits for payments made in excess of the established compensation rate.
3. Defendant shall deduct and pay directly to the attorney representing plaintiff an attorney fee of 25% of the net compensation awarded to plaintiff.
4. Defendant shall pay the costs.
This 11th day of July 2000.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
S/_______________ DIANNE C. SELLERS COMMISSIONER